# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN JOSE

---

UNITED STATES OF AMERICA,

V.

**Filed**

OCT 2 9 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

MAXITO PEAN,

# CR 14    00543    LHK
# PSG

DEFENDANT(S).

---

# INDICTMENT

VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering (Concealment); 18 U.S.C. § 1957 – Engaging in Monetary Transactions Using the Proceeds of Specified Unlawful Activity; 18 U.S.C. § 2 – Aiding and Abetting

A true bill.

_____
Foreman

Filed in open court this ___29TH___ day of Oct., 2014

_____
Clerk

No Bail Arrest Warrant          Bail $

1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  DAVID R. CALLAWAY (CABN 121782)
   Assistant United States Attorney
5
       150 Almaden Boulevard, Suite 900
6      San Jose, California 95113
       Telephone: (408) 535-5596
7      Fax: (408) 535-5066
       Email: David.Callaway@usdoj.gov
8
   Attorneys for United States of America
9

**Filed**

OCT 2 9 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

10             UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13  UNITED STATES OF AMERICA,          )   CASE NO.   CR 14 00543 LHK PSG
                                        )
14          Plaintiff,                  )   VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to
                                        )   Commit Wire Fraud; 18 U.S.C. § 1343 – Wire Fraud;
15          v.                          )   18 U.S.C. § 1956(h) – Conspiracy to Commit Money
                                        )   Laundering; 18 U.S.C. § 1956(a)(1)(B)(i) – Money
16  MAXITO PEAN,                        )   Laundering (Concealment); 18 U.S.C. § 1957 –
                                        )   Engaging in Monetary Transactions Using the
17          Defendant.                  )   Proceeds of Specified Unlawful Activity; 18 U.S.C.
                                        )   § 2 – Aiding and Abetting
18                                      )
                                        )   SAN JOSE VENUE
19                                      )
                                        )
20  _____

21                       I N D I C T M E N T

22  The Grand Jury charges:

23          At all times relevant to this Indictment, with all dates mentioned being approximate and all date

24  ranges inclusive:

25                  Email Takeover Scams Based on "Phishing"

26          1.      An "email takeover scam" refers to a scheme in which a victim is sent a so-called

27  "phishing" email designed to capture his or her username and account password. A phishing email is

28  designed to appear legitimate, but in reality is a fraudulent attempt to acquire someone's personal

INDICTMENT

1 information – such as the user's name, date of birth, account information or passwords – by false

2 pretenses. A phishing email is designed to trick the unsuspecting victim into clicking on a link that

3 delivers him to a fraudulent website designed to look like its legitimate counterpart. When the victim

4 logs into the fraudulent website, his username and password are captured; this allows the perpetrator to

5 access the victim's account, review its contents, and send or receive emails posing as the victim.

6      2.      Perpetrators of email takeover scams often set up filters within a victim's account that

7 redirect certain incoming emails – for example, emails from the victim's bank or financial advisor sent

8 to verify a transaction – to prevent the victim from discovering the fraud. By using a filter to redirect

9 those emails to the victim's trash folder, the imposter greatly reduces the likelihood that the victim will

10 see the confirming email. This allows the imposter to communicate with the victim's bank as if he (the

11 imposter) were the victim, without the victim's knowledge or permission.

12      <u>Use of "Money Mules" to Launder Fraudulently Obtained Proceeds</u>

13      3.      Persons involved in money laundering of financial transactions involving the proceeds of

14 fraud often use nominees and multiple bank accounts to transfer and withdraw funds to evade detection

15 by law enforcement. The purpose of using nominees, also known as "money mules," is to conceal the

16 nature, source, and location of the proceeds earned from the fraud. At the perpetrator's direction, a

17 money mule will open one or more bank accounts in his or her own name, or in the name of a fictitious

18 business, to make the illicit funds flowing through the bank account appear to be legitimate. The

19 nominee accounts are opened for the sole purpose of receiving fraudulent funds and transferring those

20 funds to the perpetrator, sometimes using other intermediary accounts in a process known as "layering."

21      <u>C.S.P. is Victimized by Email Takeover Scam, Loses $233,200</u>

22      4.      By not later than February 12, 2013, C.S.P., a resident of Saratoga, California, was the

23 victim of an email takeover scam. Beginning on that date, an unknown person, posing as C.S.P., began

24 communicating with K.M., an employee with Deutsche Bank in San Francisco, requesting K.M. to

25 transfer funds from C.S.P.'s bank account. The emails between C.S.P. and K.M. were sent to and from

26 C.S.P.'s Yahoo! email account; however, the person who sent and received those emails from C.S.P.'s

27 account was not C.S.P., but rather an imposter who had gained control of the account by means of a

28 phishing email and was posing as C.S.P. without his knowledge or authority.

INDICTMENT

5.      As a result of the scheme, on February 14, 2013, $233,200 was wired from C.S.P.'s Deutsche Bank account to an account ending in 3055 at Fifth Third Bank, held in the name of "Southeastern Capital Group Inc." in Lauderhill, Florida ("the SCG account"). The SCG account was opened on January 7, 2013, by unindicted co-conspirator R.E., a homeless man from Florida who was acting as a money mule in return for a small cash payment.

6.      On February 15, 2013, all of the funds were removed from the account: $1,000 was taken in the form of two $500 cash withdrawals, while $232,000 was wired to an account ending in 0637 at SunTrust Bank, held in the name of "Meade Financial Services," a company registered with the State of Florida in the name of unindicted co-conspirator L.G., who was also acting as a money mule.

7.      On February 12, 2013, the person posing as C.S.P. also directed K.M. to wire $150,000 from C.S.P.'s Deutsche Bank account to an account at Regions Bank held in the name of "T & L Audio." That transfer did not go through immediately, however, and the bank ultimately was able to stop payment.

Funds From C.S.P. Fraud Go to Maxito PEAN

8.      Unindicted co-conspirator L.G. opened the SunTrust account in the name of Meade Financial Services on February 13, 2013, two days before $232,000 in proceeds from the fraud against C.S.P. were wired into the account. Of that sum, $230,000 was withdrawn over a three-day period using three checks, dated (1) February 15, 2013, for $30,000, made payable to "Natures [*sic*] Spring, LLC"; (2) February 15, 2013, for $50,000, made payable to "Capital Rescue, LLC"; and (3) February 19, 2013, made payable to "Maxito Pean," for $150,000. The Meade Financial Services account was closed on March 7, 2013. "Natures Spring, LLC" and "Capital Rescue, LLC" were both registered to the same address in Florida and both listed "Maxito Pean" as the officer or managing member.

9.      On February 26, 2013, Maxito Pean (PEAN) used FedWire to send $150,000 from his SunTrust bank account ending in 8307 to an account ending in 9294 held at Bank of Nova Scotia, Port Au Prince, Haiti.

10.     On August 21, 2013, PEAN possessed a checkbook from Bank of America in the name of "Southeastern Capital Group" with the signature of R.E. (the money mule) at the bottom of one of the blank checks and on a receipt for another check previously written. PEAN also had a SunTrust bank

INDICTMENT

1   statement for his own account (SunTrust Bank account ending in 8307) that showed a $150,000 deposit

2   made on February 21, 2013.

3                                 The Scheme and Artifice to Defraud

4          11.      Beginning in approximately February 2013, and continuing through August 21, 2013,

5   PEAN received funds that had been fraudulently obtained from C.S.P. through an email takeover scam.

6   In order to hide his involvement in the scheme, PEAN arranged for nominees, including but not

7   necessarily limited to unindicted co-conspirators R.E. and L.G., to set up businesses and bank accounts

8   in their own names, receive the fraudulent proceeds on PEAN's behalf, then funnel those funds back to

9   him.

10                            Interstate Nexus for Money Laundering Counts

11          12.      Fifth Third Bank, SunTrust Bank, and TD Bank are financial institutions engaged in, and

12   the activities of which affect, interstate and foreign commerce in some way and degree, within the

13   meaning of 18 U.S.C. § 1956(c)(4)(B) and § 1957(f)(1).

14   COUNT ONE:  (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

15          13.      Paragraphs 1 through 12, and the transactions alleged in Counts Two through Five, are

16   alleged and incorporated as if fully set forth here.

17          14.      Beginning at a time unknown to the Grand Jury, but no later than February 12, 2013, and

18   continuing through August 21, 2013, in the Northern District of California and elsewhere, the defendant,

19                                         MAXITO PEAN,

20   and others both known and unknown to the Grand Jury, conspired to devise and did devise a material

21   scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent

22   pretenses, representations, and promises, and by material omissions, and for the purpose of executing

23   such scheme and artifice did transmit and cause to be transmitted by means of wire communication in

24   interstate commerce certain writings, signs, signals, pictures, and sounds, including, but not limited to,

25   the wire communications alleged in Counts Two through Five.

26          All in violation of Title 18, United States Code, Section 1349.

27   //

28   //

INDICTMENT

4

COUNTS TWO THROUGH FIVE:  (18 U.S.C. §§ 1343 and 2 – Wire Fraud; Aiding and Abetting)

15.     Paragraphs 1 through 12, and the transactions alleged in Counts Two through Five and Seven through Sixteen, are alleged and incorporated as if fully set forth here.

16.     On or about the dates set forth below, in the Northern District of California, and elsewhere, for the purpose of executing a material scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and by material omissions, the defendant,

MAXITO PEAN,

and others both known and unknown to the Grand Jury, did transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, including, but not limited to, the wire communications alleged in Counts Two through Five below:

| Count | Date | Description of Wire Communication | Sent From/To |
|---|---|---|---|
| 2 | 2/12/2013 at 6:17 a.m. | Email from C.S.P.'s Yahoo account to K.M. requesting wire transfer of funds | From Los Angeles to San Francisco, CA, by way of New York |
| 3 | 2/12/2013 at 7:15 a.m. | Email from K.M. to C.S.P. attaching a Letter of Authorization (LOA) for the requested transfer of funds | From San Francisco to Los Angeles, CA, by way of New York |
| 4 | 2/12/2013 at 7:39 a.m. | Email from C.S.P. to K.M. returning a signed copy of the LOA, requesting confirmation number when wire transfer of funds is completed | From Los Angeles to San Francisco, CA, by way of New York |
| 5 | 2/14/2013 | Wire Transfer of $233,200 from Deutsche Bank to account ending in 3055 at Fifth Third Bank, held in the name of Southeastern Capital Group | San Francisco, CA to Pembroke Pines, FL |

All in violation of Title 18, United States Code, Sections 1343 and 2.

//

//

//

INDICTMENT

1    COUNT SIX:  (18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering)

2         17.    Paragraphs 1 through 12, and the transactions alleged in Counts Two through Five and

3    Seven through Sixteen, are alleged and incorporated as if fully set forth here.

4         18.    Beginning at a time unknown to the Grand Jury, but no later than January 7, 2013, and

5    continuing through August 21, 2013, in the Northern District of California and elsewhere, the defendant,

6                                    MAXITO PEAN,

7    and others both known and unknown to the Grand Jury, did conspire to commit offenses against the

8    United States in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 1957, namely:

9         a.     Knowing that property involved in a financial transaction represented the

10   proceeds of some form of unlawful activity, and which property was in fact the proceeds of specified

11   unlawful activity, namely wire fraud, the defendant conducted financial transactions knowing that those

12   transactions were designed in whole and in part to conceal and disguise the nature, location, source,

13   ownership, and control of the proceeds of that specified unlawful activity, in violation of 18 U.S.C.

14   § 1956(a)(1)(B)(i); and

15        b.     Defendant knowingly engaged in monetary transactions by, through, and to a

16   financial institution, affecting interstate commerce, in criminally derived property of a value greater than

17   $10,000, said property having in fact been derived from specified unlawful activity, namely wire fraud,

18   in violation of 18 U.S.C. § 1957.

19                                MANNER AND MEANS

20        19.    The objectives, manner, and means of the conspirators in carrying out the money

21   laundering conspiracy included the following:

22        a.     Using multiple bank accounts, in a process known as "layering," to transfer and

23   withdraw funds in order to evade detection by law enforcement;

24        b.     Using nominees to set up businesses and bank accounts to receive, transfer, and

25   withdraw funds in order to evade detection by law enforcement; and

26        c.     Engaging in monetary transactions using criminally derived property of a value

27   greater than $10,000, said property having in fact been derived from the specified unlawful activity of

28   wire fraud.

INDICTMENT

1    In order to accomplish the objectives of the conspiracy, the defendant engaged in the financial

2 transactions alleged in Counts Seven through Sixteen, among others.

3    All in violation of Title 18, United States Code, Section 1956(h).

4 COUNTS SEVEN THROUGH TEN: (18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering)

5    20.    Paragraphs 1 through 12, and the transactions alleged in Counts Two through Five, are

6 alleged and incorporated as if fully set forth here.

7    21.    On the dates listed below, in the Northern District of California and elsewhere, the

8 defendant,

9                           MAXITO PEAN,

10 aided and abetted by others both known and unknown to the Grand Jury, knowing that property involved

11 in a financial transaction represented the proceeds of some form of unlawful activity, and which

12 property was in fact the proceeds of specified unlawful activity, namely wire fraud, conducted the

13 following financial transactions, knowing that those transactions were designed in whole and in part to

14 conceal and disguise the nature, location, source, ownership, and control of the proceeds of that

15 specified unlawful activity:

16

| | Date | Description of Transaction | Amount |
|---|---|---|---|
| 7 | 2/15/2013 | Wire transfer from Fifth Third Bank account x3055, in the name of SCG, to SunTrust Bank account x0637, in the name of Meade Financial Services | $232,000 |
| 8 | 2/15/2013 | Check cashed against Meade Financial Services account x0637, made payable to "Natures Spring, LLC" | $30,000 |
| 9 | 2/15/2013 | Check cashed against Meade Financial Services account x0637, made payable to "Capital Rescue, LLC" | $50,000 |
| 10 | 2/19/2013 | Check cashed against Meade Financial Services account x0637, made payable to "Maxito Pean" | $150,000 |

27

28    All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and Section 2.

INDICTMENT

COUNTS ELEVEN THROUGH SIXTEEN:        (18 U.S.C. §1957 – Engaging in Monetary
                                                               Transactions Using Criminally Derived Property)

22.    Paragraphs 1 through 12, and the transactions alleged in Counts Two through Five, are alleged and incorporated as if fully set forth here.

23.    On the dates listed below, in the Northern District of California and elsewhere, the defendant,

MAXITO PEAN,

aided and abetted by others both known and unknown to the Grand Jury, did knowingly engage in the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, said property having in fact been derived from specified unlawful activity, namely wire fraud:

|  | Date | Description of Transaction | Amount |
|---|---|---|---|
| 11 | 2/15/2013 | Wire transfer from Fifth Third Bank account x3055, in the name of SCG, to SunTrust Bank account x0637, in the name of Meade Financial Services | $232,000 |
| 12 | 2/15/2013 | Check cashed against Meade Financial Services account x0637, made payable to "Natures Spring, LLC" | $30,000 |
| 13 | 2/15/2013 | Check cashed against Meade Financial Services account x0637, made payable to "Capital Rescue, LLC" | $50,000 |
| 14 | 2/19/2013 | Check cashed against Meade Financial Services account x0637, made payable to "Maxito Pean" | $150,000 |
| 15 | 2/22/2013 | Electronic Check payment from Natures Spring LLC bank account x2989 held at TD Bank, payable to Hudsons Furniture | $11,500 |
| 16 | 2/26/2013 | FedWire from SunTrust Bank account x8307, held in the name of "Max C. Pean" or "Maxito K. Pean" to account x9294, Bank of Nova Scotia, Port-au-Prince, Haiti | $150,000 |

INDICTMENT

1    All in violation of Title 18, United States Code, Section 1957 and Section 2.

2    DATED:                                              A TRUE BILL

3         10/29/14

4                                                        _____
                                                         FOREPERSON
5

6    MELINDA HAAG
     United States Attorney
7

8    _____

9    MATTHEW A. PARRELLA
     Chief, Computer Hacking/Intellectual Property
10

11   (Approved as to form:
12                       AUSA David R. Callaway  )

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT

9

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

─── OFFENSE CHARGED ───

SEE ATTACHMENT

**Filed**

OCT 2 9 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

PENALTY:  SEE ATTACHMENT

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

─── DEFENDANT - U.S ───

► Maxito PEAN

DISTRICT COURT NUMBER

CR 14   00543 LHK PSG

─── DEFENDANT ───

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

S/A Kyle Bashor IRS-CI

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant
} MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form     MELINDA HAAG

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     DAVID R. CALLAWAY

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☒ On another conviction          ☒ Federal ☐ State
}

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer  ☐ Yes      If "Yes"
been filed?  ☐ No        give date
filed
DATE OF                  Month/Day/Year
ARREST
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED        Month/Day/Year
TO U.S. CUSTODY  ►

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT     Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

\* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                Before Judge:

Comments:  Def. is incarcerated at D. Ray James CI, Folkston, GA. Scheduled release 12/09/14. (Prisoner Reg. # 03848-104)

## PENALTY SHEET ATTACHMENT
## MAXITO PEAN

COUNT ONE:  (18 U.S.C. § 1349-Attempt and Conspiracy to Commit Wire Fraud)

Penalties:     Up to twenty years imprisonment;
                $250,000 fine (or twice the gain/loss);
                Three years supervised release;
                $100 special assessment.

COUNTS TWO THROUGH FIVE:  (18 U.S.C. § 1343 and 2 - Wire Fraud; Aiding and Abetting)

Penalties:     Up to twenty years imprisonment;
                $250,000 fine (or twice the gain/loss);
                Three years supervised release;
                $100 special assessment.

COUNT SIX:  18 U.S.C. § 1956(h)-Conspiracy to Commit Money Laundering

Penalties:     20 years imprisonment;
                $500,000 fine (or twice the gross gain or gross loss);
                Three years supervised release;
                $100 special assessment.

COUNTS SEVEN THROUGH TEN: 18 U.S.C. § 1956(a)(1)(B)(i)-Money Laundering

Penalties:     20 years imprisonment;
                $500,000 fine (or twice the gross gain or gross loss);
                Three years supervised release;
                $100 special assessment.

COUNTS ELEVEN THROUGH SIXTEEN:   (18 U.S.C. §1957 – Engaging in Monetary Transactions Using Criminally Derived Property)

Penalties:     10 years imprisonment;
                $250,000 fine (or twice the amount of the criminally-derived
                property involved in the transaction);
                Three years of supervised release;
                $100 special assessment